IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

JOEAN LOWERY                                                                                    PLAINTIFF

v.                                              3:09CV00013-WRW

UNUM LIFE INSURANCE COMPANY
OF AMERICA                                                                                      DEFENDANT

## ORDER

Pending are cross-Motions for Summary Judgment (Doc. Nos. 15, 22). The parties have responded to each motion.[1] For the reasons set out below, Plaintiff's Motion (Doc. No. 22) is GRANTED and Defendant's Motion (Doc. No. 15) is DENIED.

**I.    BACKGROUND**

Viskase Companies hired Plaintiff in 1986 and Plaintiff was a Tower Operator when she began receiving short-term disability benefits for neck and back pain in July, 2005.[2] Plaintiff applied for long-term disability benefits on March 3, 2006, and received benefits from July 9, 2006, through October 22, 2007.[3]

Between 2005 and 2007 Plaintiff was also diagnosed with gout, sleep apnea, GERD,[4] hypertension, headaches, sore throat, and cough. However, each of these ailments appears to have responded to treatment and is under control.[5] Plaintiff's persistent ailments have been neck and back pain from degenerative disc disease and carpal tunnel syndrome.[6]

---

[1] Doc. Nos. 18, 22.

[2] Administrative Record ("AR") at 142.

[3] Doc. No. 22.

[4] Gastroesophageal reflux disease.

[5] Doc. No. 23; AR at 320, 365-66, 857.

[6] AR at 299, 1341.

1

On March 7, 2005, Plaintiff underwent "a nerve conduction study of the upper left extremity" which was determined to be "abnormal" and revealed "mild median nerve compressions as the nerve entered the wrist." Plaintiff was diagnosed with "mild Carpal Tunnel Syndrome of the left upper extremity."[7]

In July, 2005, Plaintiff complained of back pain, and was diagnosed with degenerative disc disease by her treating physician, Dr. Reggie Collum.[8] A CT scan was conducted on Plaintiff's lumbar area; however, the findings were normal.[9] A September, 2005, MRI was performed on Plaintiff's cervical spine, and revealed "small posterior broad based disc bulge[s]" between the C3 and C-7 vertebrae, but was "otherwise, unremarkable."[10]

On April 11, 2006, Ronald Crow conducted a Physical Residual Functional Capacity Exam ("FCE") for UNUM. Among other things, he concluded that Plaintiff could lift 50 lbs occasionally, lift 25 lbs frequently, and sit, stand, or walk about 6 hours in an 8 hour workday.[11]

On May 16, 2006, Plaintiff was diagnosed with both cervical and lumbar spondylosis with facet disease. The treating physician noted that Plaintiff benefitted from 2.5 mg of methadone three times daily "while having minimal or no side effects or complications."[12] However, a month later, Plaintiff informed her treating physician that, while the methadone

---

[7]AR at 83.

[8]AR at 300.

[9]AR at 1462.

[10]AR at 27.

[11]AR at 1848.

[12]AR at 321.

helps control her back pain, she is unable to function when she takes it.[13]  To treat her back pain, Plaintiff also underwent radio frequency blocks, injections, and massage therapy.[14]

On August 10, 2006, nurse Nora Moore, on behalf of Defendant, conducted a clinical review of Plaintiff's file and concluded that "[t]he results of diagnostic studies fail to provide structural basis for the degree of restriction noted by her family practitioner."[15]

A little over a month later, UNUM's medical consultant, Dr. Susan Council conducted a medical review and found that Plaintiff's restrictions were reasonable, but that she should be able to return to her own occupation eight weeks after date of disability if she pursued aggressive treatment.[16]  Dr. Council noted that the MRI of Plaintiff's lower back appeared to be normal and that such a finding was "surprising for this age group."[17]  She also noted that the "CT scan of revealed minimal pathology (what would be expected for her age.),"[18] and that there were "no apparent objective findings to explain her ongoing symptoms."[19]  Dr. Council noted that Plaintiff's left carpal tunnel syndrome was "treated appropriately with a night splint" and was "not currently significant enough to prevent full time work."[20]

On October 10, 2006, Dr. Matthew Hine, a physician consultant for UNUM, agreed that Plaintiff "is likely to have some functional impairment related to cervical facet arthropathy,

---

[13]AR at 395.

[14]AR at 446.

[15]AR at 321.

[16]AR at 348.

[17]*Id.*

[18]AR at 343.

[19]AR at 344.

[20]AR at 348.

myofascial pain, and mild left carpal tunnel syndrome."[21]  However, he concluded that the "restrictions and limitations put forth by the attending physician (no lifting, no stooping, no bending, no sitting or standing) are neither reasonable nor medically supported in the records presented."[22]  He also suggested that a FCE be conducted, as well as a Independent Medical Examination ("IME").

In March, 2007, UNUM had Dr. Edward Pratt perform IME.  Dr. Pratt found that Plaintiff "does have clinical evidence of cervical arthritis and chronic pain syndrome," but it is "no[t] completely disabling."[23]  However, he reiterated that he did not have access to x-rays of the cervical and lumbar spine and had not other diagnostics of the area, which limited his assessment.  Dr. Pratt noted that Plaintiff had been diagnosed with hypersomatic disorder, which he would "redefine as pain complaints that exceed here [sic] objective medical findings."[24]  According to Dr. Pratt, Plaintiff's "inactivity and deconditioning do undermine her ability to work" and while "[i]t is possible Ms. Lowery could return to her previous occupation after a conditioning program . . . [i]t is unlikely that she will permit herself to be rehabilitated to that extent."[25] He also determined that "specific eval[uation] symptoms of carpal tunnel was negative."[26]

Plaintiff underwent an FCE on September 25, 2007.  The report noted "signs of discrepancy with pain and behavior, *e.g.,* on the balance beam she was laughing and appeared to

---

[21]AR at 366.

[22]AR at 367.

[23]AR at 857.

[24]*Id.*

[25]*Id.*

[26]AR at 855.

be enjoying the task, yet she immediately reported pain afterward that was 8/10."[27] The evaluator also determined that self-limiting behavior was present 35% of the time, which suggests that "psychosocial and/or motivational factors are affecting test results."[28] She complained of headache and pain in both arms, legs, neck, and lower back.  The report concluded that Plaintiff "demonstrated the ability to sustain light physical demand level work in an 8-hour workday."[29]  The evaluator also noted that "Ms. Lowery seemed at ease in the waiting room.  She sat for 15 minutes and showed no sign of pain/discomfort."[30]

Christy N. Searcy performed a Vocational Assessment for UNUM on October 12, 2007. The Assessment concluded that $8.98/hour qualified as "gainful" and that Plaintiff's education, work history, skills, and physical restrictions would allow her to work as a gate guard, cafeteria cashier, or sales clerk.[31]

In an October 22, 2007, letter UNUM informed Plaintiff that as of July 9, 2007, she had received 12 months of benefit payments and that "[b]ased on the findings of the [September 25, 2007] FCE and the vocational assessment . . . we find that you do not meet the definition of disability as it pertains to any gainful occupation."[32]

When Plaintiff applied for Social Security Disability, Dr. Collum, on February 26, 2008, filled out a work ability form for the Social Security Administration.  In the form, Dr. Collum

---

[27]AR at 1091.

[28]AR at 1092.

[29]AR at 1107.

[30]AR at 1091.

[31]AR at 1106-1108.

[32]AR at 1128-1129.

5

noted that Plaintiff: (1) could occasionally lift and carry up to 10 lbs;[33] (2) could sit for two hours total in a day and stand and walk for no more than 30 minutes a day; (3) could do nothing with her left hand because of carpal tunnel;[34] (4) could not prepare simple meals to feed herself;[35] (5) could sort, handle, and use paper/files; and (6) could perform activities like shopping.[36] Dr. Collum also noted that Plaintiff's carpal tunnel syndrome has resulted in "muscle wasting," which prevented using the left hand.[37]

On March 14, 2008, an Administrative Law Judge found that Plaintiff was disabled under the Social Security Act, and entitled to Social Security Disability Benefits.[38]

In April, 2008, at the request of Plaintiff's lawyer, David Elmore wrote a Vocational Rehabilitation Report.[39] He noted that Plaintiff reported "frequently dozing" as a result of her medications, and that she performs "minor household cleaning chores" with help from her daughter "on the heavier tasks, *i.e.*, emptying clothes washer, etc."[40] Mr. Elmore noted that in an 8 hour work day, Plaintiff could stand 30 minutes at a time, up to 3 hours total; walk 15 minutes at a time up to 1.5 hours total; and sitting 30 minutes at a time with a total of 2 hours sitting and 2 hours laying down.[41] Mr. Elmore concluded that Dr. Cullom's analysis would result in

---

[33]AR at 1200.

[34]AR at 1202.

[35]AR at 1205.

[36]*Id*.

[37]AR at 1202.

[38]AR at 1210-1214.

[39]AR at 1429.

[40]AR at 1430.

[41]*Id.*

6

Plaintiff's "exertional standards" being "less than Fulltime" and "'less than Sedentary' WITH limitations in the hands and upper extremities."[42]  Ultimately, Mr. Elmore concluded that Plaintiff "is precluded" from any full-time occupation.[43]

## II.  DISCUSSION

### A. Standard of Review

Under ERISA, "[a] civil action may be brought by a participant or beneficiary . . . to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits . . . ."[44]  A denial of benefits under a plan governed by ERISA is to be reviewed *de novo*, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[45]  Here, the parties agree that the *de novo* standard of review is appropriate.[46]

Defendant concedes that Plaintiff is unable to perform her own occupation.[47]  So, the issue is limited to whether Plaintiff can perform *any* gainful occupation.

Under the policy, a person is "disabled" if "because of injury or sickness . . . after the insured has received benefits for 12 consecutive months, the insured cannot perform each of the material duties of any gainful occupation for which he is reasonably fitted by training, education or experience."[48]

---

[42] AR at 1432.

[43] *Id.*

[44] 29 U.S.C. § 1132(a)(1)(B).

[45] *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

[46] Doc. Nos. 22, 25.

[47] Doc. No. 25.

[48] AR at 160.

**B.     The Medical Records**

The record is replete with competing medical opinions and analysis regarding Plaintiff's ability to work.  On one end, Defendant's reviewers determined that Plaintiff would be able to perform a gainful, sedentary occupation. In fact, Defendant's "Independent Medical Examiner" went so far as to conclude that with "a conditioning plant," Plaintiff could perform her *own* occupation[49] -- at this point, even Defendant concedes that is not possible.  At the other end, Plaintiff's treating physician has diagnosed Plaintiff with numerous long-term medical conditions, and has asserted that she has been unable to work since 2005.

However, the evidence relied on by Defendant appears to be contradictory.  At one point Dr. Hines noted that Plaintiff may "have limitations arising from lumbar facet arthropathy," but in the very next sentence claimed that the CT scan "was not consistent with a diagnosis of lumbar facet arthropathy."[50]  Yet, a little bit later, he again states the if Plaintiff "has current symptoms due to lumbar facet arthropathy" she may well need to limit her bending, twisting, and handling of over 40 pounds (however, he gives no explanation for choosing 40 pounds). Additionally, during his IME, Dr. Pratt admitted that his findings regarding Plaintiff's back problems were limited because he did not have access to x-rays or other "advanced diagnostics" of the area.[51]

Although Dr. Council concluded that in September, 2006, Plaintiffs carpal tunnel syndrome was "not currently significant enough to prevent full time work,"[52] in 2008, Dr. Cullom noted that Plaintiff's carpal tunnel has resulted "muscle wasting" on her left side,

---

[49] AR at 857.

[50] AR at 366.

[51] AR at 857.

[52] AR at 348.

making Plaintiff hardly able to use her left hand, if at all.[53]  Defendant provided no evidence to refute Dr. Cullom's finding.

The April 11, 2006, FCE, which concluded that Plaintiff could lift 50 lbs occasionally, lift 25 lbs frequently, and sit, stand, or walk about 6 hours in an 8 hour workday, also appears to be unreliable.[54]  For example, Mr. Crow made no markings when asked to "Explain how and why the evidence supports your conclusions . . . Cite the specific facts upon which your conclusions are based."[55]  Mr. Crow also failed to make any markings in the "Symptoms" section of the form.[56]

Additionally, the September, 2007, FCE, which concluded that Plaintiff could perform more than sedentary work over an eight hour day, appears to me to be result driven.  The report focused on what the examiner interpreted as Plaintiff's self-limiting behavior, rather than providing a detailed analysis of the testing and observations used to determine Plaintiff's functional ability.  Furthermore, there was no indication that the examiner tested Plaintiff's ability to use her left hand -- rather, the report simply concluded that Plaintiff was capable of "Handling Constantly."[57]

Finally, while Plaintiff may be able to work some, by no means would it amount to a gainful occupation.  Clearly, she would be unable to work an eight hour day or a 40-hour week.  Not only would Plaintiff's physical limitation prevent her from working, but her medications

---

[53]AR at 1202.

[54]AR at 1848.

[55]*Id.*

[56]AR at 1852.

[57]AR at 1093.

9

would as well -- which, notably, Defendant appears to have overlooked when determining that Plaintiff was capable of gainful employment. Plaintiff's extensive list of medications, several of which have secondary effects of drowsiness, would drastically inhibit her ability to work. For example, for daily pain Plaintiff takes: Tylenol #3 (30 mg Codeine/300 mg Acetaminophen) twice a day (in 2008, Plaintiff was taking it 4 times a day);[58] 500 mg of naproxen twice a day; 1 mg Clonazepam (anti-anxiety) twice a day; and 10 mg Cyclobenzaprine (muscle relaxer) three times a day.[59] Finally, Defendant does not dispute that Plaintiff has back pain that requires this medication.

Accordingly, I find that the weight of the evidence establishes that Plaintiff is unable to perform any gainful occupation, and is disabled under the language of the plan.

## CONCLUSION

Based on the findings of fact and conclusions of law above, Plaintiff's Motion for Summary Judgment (Doc. Nos. 22) is GRANTED, and Defendant's Motion for Summary Judgment (Doc. No. 15) is DENIED. Defendant is directed to immediately reinstate Plaintiff's monthly disability benefits, retroactive to October 22, 2007, with interest.

IT IS SO ORDERED this 11th day of December, 2009.

/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE

---

[58] AR at 1430.

[59] AR at 1290-91.